## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KEAMBER JATRELL MOORE,

     Plaintiff,

-vs-

Case No.

EQUIFAX INFORMATION SERVICES
LLC; EXPERIAN INFORMATION
SOLUTIONS, INC.; TRANS UNION
LLC; and CREDIT ACCEPTANCE
CORPORATION,

     Defendants.

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

COMES NOW Plaintiff, KEAMBER JATRELL MOORE (hereinafter "Plaintiff"), by and through her undersigned counsel, for her cause of action against Defendants, EQUIFAX INFORMATION SERVICES LLC (hereinafter "Equifax"); EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter "Experian"); TRANS UNION LLC (hereinafter "Trans Union"); and CREDIT ACCEPTANCE CORPORATION (hereinafter "CAC"), (hereinafter collectively "Defendants"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

1

## PRELIMINARY STATEMENT

1.     This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to the FCRA.

2.     Today in America there are three major consumer reporting agencies, Equifax Information Services LLC (hereinafter "Equifax"), Trans Union LLC (hereinafter "Trans Union"), and Experian Information Solutions, Inc. (hereinafter "Experian") (hereinafter collectively "CRAs").

3.     Consumer reporting agencies that create consumer reports, like the CRAs, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities, particularly where a consumer makes a dispute about information reported.

4.     When a consumer, like Plaintiff, disputes information through the CRAs, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5.     The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin.

Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICTION, VENUE, AND PARTIES

6.     The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

7.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

8.     Venue is proper in this District as Equifax's principal address is in this District, Defendants transact business within this District, and violations described in this Complaint occurred in this District.

9.     Plaintiff is a natural person and resident of Mecklenburg County in the State of North Carolina. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10.     Equifax is a corporation headquartered at 1550 Peachtree Street, Northwest in Atlanta, Georgia 30309.

11.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C § 1681(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C § 1681(d) to third parties.

12.     Equifax disburses such consumer reports to third parties under contract for monetary compensation.

13.     Experian is a corporation with its principal place of business in the State of California and is authorized to do business in the State of Georgia through its registered agent, C T Corporation System, located at 289 S Culver Street, Lawrenceville, Georgia 30046.

14.     Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

15.     Experian disburses such consumer reports to third parties under contract for monetary compensation.

16.     Trans Union is a corporation with its principal place of business in the State of Illinois and is authorized to do business in the State of Georgia through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

17.     Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

18.     Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

19.     CAC is a corporation with its principal place of business in the State of Michigan and is authorized to do business in the State of Georgia through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

20.     CAC is a "furnisher of information" as that term is used in 15 U.S.C § 1681s-2.

21.     CAC furnished information about Plaintiff to the CRAs that was inaccurate.

## FACTUAL ALLEGATIONS

22.     Plaintiff is alleged to owe a debt to CAC, partial account number ending x9476, as to an auto loan (hereinafter "CAC Account"). Plaintiff does not have an account with CAC and never applied or gave permission to anyone to apply using her information for the CAC Account.

23.     Upon information and belief, Plaintiff is a victim of identity theft.

24.     In or about October 2023, Plaintiff received alerts through her credit monitoring app regarding inquiries she did not authorize.

25.     Shortly thereafter, Plaintiff received mail from CAC and GEICO regarding a car which she did not purchase or authorize anyone to purchase on her behalf.

26.     In or about November 2023, Plaintiff contacted GEICO to dispute the erroneous account, and subsequently, the erroneous GEICO account was cancelled.

27.     In or about November 2023, Plaintiff contacted Equifax via telephone and disputed the erroneous CAC Account which did not belong to her.

28.     Plaintiff did not receive dispute results from Equifax. However, upon review of her updated Equifax credit report, Plaintiff observed that the CAC Account continued to appear with a comment which indicated it was disputed.

29.     Equifax failed to do any independent investigation into Plaintiff's dispute, but rather parroted information it received from the furnisher.

30.     Equifax never attempted to contact Plaintiff during the alleged investigation.

31.     Upon information and belief, Equifax notified CAC of Plaintiff's dispute. However, CAC failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Equifax in connection with the dispute investigation.

32.     On or about December 11, 2023, Plaintiff filed a police report with the Charlotte-Mecklenburg Police Department regarding the fraudulent account and identity theft.

33.     In or about December 2023, Plaintiff contacted Experian via telephone to dispute the erroneous CAC Account which did not belong to her.

34.     On or about January 8, 2024, Plaintiff received dispute results from Experian which stated the CAC Account was verified and would remain on her credit report.

35.     Experian failed to do any independent investigation into Plaintiff's dispute, but rather parroted information it received from the furnisher.

36.     Experian never attempted to contact Plaintiff during the alleged investigation.

37.     Upon information and belief, Experian notified CAC of Plaintiff's dispute. However, CAC failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Experian in connection with the dispute investigation.

38.     On or about June 11, 2024, Plaintiff obtained copies of her credit reports from the CRAs. Upon review, Plaintiff observed the CAC Account was reported with a status of 120 days past due and balance of $47,958.

39.    In response to the inaccurate reporting, on or about June 17, 2024, Plaintiff mailed detailed written dispute letters to the CRAs. In the dispute letter, Plaintiff advised that she believed she was a victim of identity theft and that the erroneous CAC Account did not belong to her. To confirm her identity, images of her driver's license and US Passport were included in the letter. Further, Plaintiff included images of the erroneous credit reporting, images of the police report filed with the Charlotte-Mecklenburg Police Department, and other supporting documents.

40.    Plaintiff mailed her detailed written dispute letter via USPS Certified Mail to Equifax (9505 5163 0586 4169 3090 50), Experian (9505 5163 0586 4169 3090 12), and Trans Union (9505 5163 0586 4169 3090 36).

41.    On or about July 5, 2024, Plaintiff received dispute results from Experian which stated the CAC Account was verified and remains in her credit report.

42.    Experian failed to do any independent investigation into Plaintiff's dispute, but rather parroted information it received from the furnisher.

43.    Experian never attempted to contact Plaintiff during the alleged investigation.

44.    Upon information and belief, Experian notified CAC of Plaintiff's dispute. However, CAC failed to conduct a reasonable investigation and merely

compared its own erroneous data to that provided by Experian in connection with the dispute investigation.

45.     On or about July 6, 2024, Plaintiff received dispute results from Trans Union which stated the CAC Account was verified as accurate.

46.     Trans Union failed to do any independent investigation into Plaintiff's dispute, but rather parroted information it received from the furnisher.

47.     Trans Union never attempted to contact Plaintiff during the alleged investigation.

48.     Upon information and belief, Trans Union notified CAC of Plaintiff's dispute. However, CAC failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Trans Union in connection with the dispute investigation.

49.     Despite confirmation of delivery on June 20, 2024, Plaintiff did not receive dispute results in the mail from Equifax.

50.     On or about July 22, 2024, Plaintiff contacted Equifax via telephone to request dispute results, and the representative advised that Equifax did not receive Plaintiff's dispute letter despite the USPS tracking information stating the letter was delivered on June 20, 2024.

51.     On or about July 22, 2024, Plaintiff reviewed her Equifax credit report and observed the CAC Account continued to be reported.

52.     Plaintiff provided enough information to Equifax to identify her file and to handle the dispute. Equifax failed to follow the mandates of the FCRA and refused to conduct a reasonable investigation.

53.     Equifax failed to do any independent investigation into Plaintiff's dispute, but rather parroted information it received from the furnisher.

54.     Equifax never attempted to contact Plaintiff during the alleged investigation.

55.     Upon information and belief, Equifax notified CAC of Plaintiff's dispute. However, CAC failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Equifax in connection with the dispute investigation.

56.     On or about August 8, 2024, Plaintiff contacted Equifax via telephone and submitted another dispute of the erroneous CAC Account which did not belong to her.

57.     On or about August 14, 2024, Plaintiff reviewed her Equifax credit report and observed the CAC Account continued to be reported with a status of not more than 180 days past due and a balance of $48,501.

58.     On or about August 15, 2024, Plaintiff obtained an updated copy of her updated Experian credit report. Upon review, Plaintiff observed the CAC Account continued to be reported with a status of past due and balance of $49,028. Further,

Plaintiff a new account from Hunter Warfield, partial account number 962704*, with a balance of $4,131 which did not belong to her (hereinafter "Hunter Warfield Account").

59.     Shortly thereafter, Plaintiff submitted a dispute online to Equifax regarding the Hunter Warfield Account which did not belong to her.

60.     Due to the inaccurate reporting, on or about August 15, 2024, Plaintiff submitted online a second detailed dispute letter to Experian, and on or about August 19, 2024, Plaintiff submitted online a second detailed dispute to Trans Union. In the letter, Plaintiff reiterated that she believed she was a victim of identity theft and that the erroneous CAC Account and Hunter Warfield Account did not belong to her. To confirm her identity, images of her driver's license and US Passport were included in the letter. Further, Plaintiff included images of the erroneous credit reporting, images of the police report filed with the Charlotte-Mecklenburg Police Department, and other supporting documents.

61.     On or about August 22, 2024, Plaintiff received dispute results from Trans Union which stated the CAC Account and Hunter Warfield Account were deleted from her credit file.

62.     On or about August 26, 2024, Plaintiff received dispute results from Equifax which stated the Hunter Warfield Account was deleted from her credit file.

63.    Plaintiff did not receive dispute results from Equifax as to the CAC Account. However, when Plaintiff attempted to submit a new dispute as to the CAC Account, it appeared the account was no longer appearing in her credit file.

64.    On or about September 4, 2024, Plaintiff received dispute results from Experian which stated the CAC Account and Hunter Warfield Account were deleted from her credit file.

65.    As a result of the inaccurate reporting and erroneous collection attempts, Plaintiff has suffered damages, including, but not limited to:

     i.    Monies lost by attempting to fix her credit. Plaintiff has suffered actual damages in postage paid, wasted ink and paper, and wasted time;

    ii.    Loss of time attempting to cure the errors;

   iii.    Mental anguish, added stress, aggravation, embarrassment, sleepless nights, and other related impairments to the enjoyment of life; Plaintiff is being physically affected by Defendants' actions;

    iv.    Loss of the ability to benefit from lower interest rates; and

    v.    Apprehensiveness to apply for new credit due to the fear of rejection.

## CAUSES OF ACTION

### COUNT I
### Violations of 15 U.S.C. § 1681e(b) as to
### Defendant, Equifax Information Services LLC (Negligent)

66.     Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

67.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

68.     Equifax allowed for furnishers to report inaccurate and erroneous accounts to Plaintiff's credit file.

69.     Upon information and belief, Equifax does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

70.     Equifax selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

71.     Equifax chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

72.     Equifax violated its own policies and procedures by not deleting the erroneous account when Plaintiff provided them with the police report filed with the

Charlotte-Mecklenburg Police Department, which contained sworn testimony of the fraud.

73.    As a result of this conduct, action, and inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

74.    The conduct, action, and/or inaction of Equifax was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

75.    Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual damages against Defendant, EQUIFAX INFORMATION SERVICES LLC, jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

### COUNT II
**Violations of 15 U.S.C. § 1681e(b) as to**
**Defendant, Equifax Information Services LLC (Willful)**

14

76.     Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

77.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

78.     Equifax allowed for furnishers to report inaccurate and erroneous accounts to Plaintiff's credit file.

79.     Upon information and belief, Equifax does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

80.     Equifax selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

81.     Equifax chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

82.     Equifax violated its own policies and procedures by not deleting the erroneous accounts when Plaintiff provided them with the police report filed with the Charlotte-Mecklenburg Police Department, which contained sworn testimony of the fraud.

83.    As a result of this conduct, action, and inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

84.    The conduct, action, and/or inaction of Equifax was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

85.    Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, EQUIFAX INFORMATION SERVICES LLC, jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

### COUNT III
### Violations of 15 U.S.C. § 1681i as to
### Defendant, Equifax Information Services LLC (Negligent)

86.    Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

87.     After receiving Plaintiff's disputes, Equifax violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

88.     Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Equifax failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

89.     Plaintiff provided Equifax with the information it needed to confirm that she was a victim of identity theft. Equifax ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

90.     As a result of this conduct, action, and inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain

stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

91.     The conduct, action, and/or inaction of Equifax was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

92.     Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual damages against Defendant, EQUIFAX INFORMATION SERVICES LLC, jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

## COUNT IV
### Violations of 15 U.S.C. § 1681i as to
### Defendant, Equifax Information Services LLC (Willful)

93.     Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

94.     After receiving Plaintiff's disputes, Equifax violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable

reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

95.    Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Equifax failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

96.    Plaintiff provided Equifax with the information it needed to confirm that she was a victim of identity theft. Equifax ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

97.    As a result of this conduct, action, and inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

98.    The conduct, action, and/or inaction of Equifax was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

99.    Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, EQUIFAX INFORMATION SERVICES LLC, jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

## COUNT V
### Violations of 15 U.S.C. § 1681e(b) as to
### Defendant, Experian Information Solutions, Inc. (Negligent)

100.    Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

101.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

102.   Experian allowed for furnishers to report inaccurate and erroneous accounts to Plaintiff's credit file.

103.   Upon information and belief, Experian does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

104.   Experian selects to just parrot the information provided by the Furnisher(s) and to avoid conducting re-investigations.

105.   Experian chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

106.   Experian violated its own policies and procedures by not deleting the erroneous accounts when Plaintiff provided them with the police report filed with the Charlotte-Mecklenburg Police Department, which contained sworn testimony of the fraud.

107.   As a result of this conduct, action, and inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

108.   The conduct, action, and/or inaction of Experian was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

109.   Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

### COUNT VI
### Violations of 15 U.S.C. § 1681e(b) as to
### Defendant, Experian Information Solutions, Inc. (Willful)

110.   Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

111.   Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

112.   Experian allowed for furnishers to report inaccurate and erroneous accounts to Plaintiff's credit file.

113.   Upon information and belief, Experian does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

114.   Experian selects to just parrot the information provided by the Furnisher(s) and to avoid conducting re-investigations.

115.   Experian chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

116.   Experian violated its own policies and procedures by not deleting the erroneous accounts when Plaintiff provided them with the police report filed with the Charlotte-Mecklenburg Police Department, which contained sworn testimony of the fraud.

117.   As a result of this conduct, action, and inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

118.   The conduct, action, and/or inaction of Experian was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

119.   Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

## COUNT VII
### Violations of 15 U.S.C. § 1681i as to
### Defendant, Experian Information Solutions, Inc. (Negligent)

120.   Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

121.   After receiving Plaintiff's disputes, Experian violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit

file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

122. Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Experian failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

123. Plaintiff provided Experian with the information it needed to confirm that she was a victim of identity theft. Experian ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

124. As a result of this conduct, action, and inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

125. The conduct, action, and/or inaction of Experian was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

126.   Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

### COUNT VIII
### Violations of 15 U.S.C. § 1681i as to
### Defendant, Experian Information Solutions, Inc. (Willful)

127.   Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

128.   After receiving Plaintiff's disputes, Experian violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

129.   Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Experian failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

130.   Plaintiff provided Experian with the information it needed to confirm that she was a victim of identity theft. Experian ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

131.   As a result of this conduct, action, and inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

132.   The conduct, action, and/or inaction of Experian was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

133.   Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual or statutory damages and punitive damages

against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

### COUNT IX
### Violations of 15 U.S.C. § 1681e(b) as to
### Defendant, Trans Union LLC (Negligent)

134.   Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

135.   Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

136.   Trans Union allowed for furnishers to report inaccurate and erroneous accounts to Plaintiff's credit file.

137.   Upon information and belief, Trans Union does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

138.   Trans Union selects to just parrot the information provided by the Furnisher(s) and to avoid conducting re-investigations.

139.   Trans Union chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

140.   Trans Union violated its own policies and procedures by not deleting the erroneous accounts when Plaintiff provided them with the police report filed with the Charlotte-Mecklenburg Police Department, which contained sworn testimony of the fraud.

141.   As a result of this conduct, action, and inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

142.   The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

143.   Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual damages against Defendant, TRANS UNION LLC, jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further

violations of these parts; and grant all such additional relief as the Court deems appropriate.

### COUNT X
### Violations of 15 U.S.C. § 1681e(b) as to
### Defendant, Trans Union LLC (Willful)

144.   Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

145.   Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

146.   Trans Union allowed for furnishers to report inaccurate and erroneous accounts to Plaintiff's credit file.

147.   Upon information and belief, Trans Union does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

148.   Trans Union selects to just parrot the information provided by the Furnisher(s) and to avoid conducting re-investigations.

149.   Trans Union chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

150.   Trans Union violated its own policies and procedures by not deleting the erroneous accounts when Plaintiff provided them with the police report filed with the Charlotte-Mecklenburg Police Department, which contained sworn testimony of the fraud.

151.   As a result of this conduct, action, and inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

152.   The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

153.   Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, TRANS UNION LLC, jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

### COUNT XI
### Violations of 15 U.S.C. § 1681i as to
### Defendant, Trans Union LLC (Negligent)

154.   Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

155.   After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

156.   Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Trans Union failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

157.  Plaintiff provided Trans Union with the information it needed to confirm that she was a victim of identity theft. Trans Union ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

158.   As a result of this conduct, action, and inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

159.   The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

160.   Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual damages against Defendant, TRANS UNION LLC, jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

### COUNT XII
#### Violations of 15 U.S.C. § 1681i as to
#### Defendant, Trans Union LLC (Willful)

161.   Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

162.   After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. §
1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after
receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable
reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable
procedures with which to filter and verify disputed information in Plaintiff's credit
file; (iv) failing to review and consider all relevant information submitted by Plaintiff
in the disputes; and (v) relying upon verification from a source it has to know is
unreliable.

163.   Despite the large amount of information and documentation produced
by Plaintiff demonstrating the inaccurate reporting, Trans Union failed to conduct
independent investigations into Plaintiff's disputes and simply transferred the duty
to investigate to the furnisher.

164.   Plaintiff provided Trans Union with the information it needed to
confirm that she was a victim of identity theft. Trans Union ignored this information
and failed to conduct a thorough investigation into her disputes or otherwise make
her credit file accurate.

165.   As a result of this conduct, action, and inaction of Trans Union, Plaintiff
suffered damage, including without limitation, loss of the ability to benefit from
lower interest rates; loss of time; financial loss; and mental and emotional pain

stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

166.   The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

167.   Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

## <u>COUNT XIII</u>
### Violation of 15 U.S.C. § 1681s-2(b) as to
### Defendant, Credit Acceptance Corporation (Negligent)

168.   Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

169.   CAC furnished inaccurate account information to the CRAs, and through those CRAs to all of Plaintiff's potential lenders.

170.   After receiving Plaintiff's disputes, CAC violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiff's dispute of the account; (ii) failing to review all relevant information regarding same; (iii) failing to accurately respond to the CRAs; and (iv) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

171.   Plaintiff provided all the relevant information and documents necessary for CAC to have identified that the account was fraudulent.

172.   CAC did not have any reasonable basis to believe that Plaintiff was responsible for the account reported in its representations. It also had sufficient evidence by which to have verified that Plaintiff was not the responsible party, including information provided to CAC by Plaintiff in connection with her disputes of the account in question. Instead, it knowingly chose to follow procedures which did not review, confirm, or verify the account belonged to Plaintiff. Further, even if it would attempt to plead ignorance, it had the evidence and information with which to confirm and recognize that Plaintiff was a victim of identity theft.

173.   CAC violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to the CRAs after it had been notified that the information it was furnishing was inaccurate.

174.   As a direct result of this conduct, action and/or inaction of CAC, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

175.   The conduct, action, and inaction of CAC was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 USC § 1681o.

176.   Plaintiff is entitled to recover costs and attorney's fees from CAC in an amount to be determined by the Court pursuant to 15 USC § 1681o.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual damages against Defendant, CREDIT ACCEPTANCE CORPORATION, jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

## COUNT XIV
### Violation of 15 U.S.C. § 1681s-2(b) as to
### Defendant, Credit Acceptance Corporation (Willful)

177.   Plaintiff re-alleges and reincorporates paragraphs one (1) through sixty-five (65) above as if fully stated herein.

178.   CAC furnished inaccurate account information to the CRAs, and through those CRAs to all of Plaintiff's potential lenders.

179.   After receiving Plaintiff's disputes, CAC violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiff's dispute of the account; (ii) failing to review all relevant information regarding same; (iii) failing to accurately respond to the CRAs; and (iv) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

180.   Plaintiff provided all the relevant information and documents necessary for CAC to have identified that the account was fraudulent.

181.   CAC did not have any reasonable basis to believe that Plaintiff was responsible for the account reported in its representations. It also had sufficient evidence by which to have verified that Plaintiff was not the responsible party, including information provided to CAC by Plaintiff in connection with her disputes of the account in question. Instead, it knowingly chose to follow procedures which did not review, confirm, or verify the account belonged to Plaintiff. Further, even if it would attempt to plead ignorance, it had the evidence and information with which to confirm and recognize that Plaintiff was a victim of identity theft.

182.   CAC violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to the CRAs after it had been notified that the information it was furnishing was inaccurate.

183.   As a direct result of this conduct, action and/or inaction of CAC, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

184.   The conduct, action, and inaction of CAC was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 USC § 1681n.

185.   Plaintiff is entitled to recover costs and attorney's fees from CAC in an amount to be determined by the Court pursuant to 15 USC § 1681n.

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, CREDIT ACCEPTANCE CORPOATION, jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, KEAMBER JATRELL MOORE, respectfully requests that this Court award judgment for actual, statutory, compensatory, and punitive damages against Defendants, EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; and CREDIT ACCEPTANCE CORPORATION, jointly and severally; attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

DATED this 6th day of September 2024.

Respectfully Submitted,

*/s/ Octavio Gomez, Esq.*
Octavio Gomez, Esq.
Florida Bar No.: 0338620
Georgia Bar No.: 617963
Pennsylvania Bar No.: 325066
The Consumer Lawyers PLLC
501 E. Kennedy Blvd, Ste 610
Tampa, Florida 33602
Telephone: 813.299.8537
Facsimile: 844.951.3933
Tav@TheConsumerLawyers.com
*Attorney for Plaintiff*